**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| Amanda Kemmeling,<br><br>Plaintiff,<br><br>v.<br><br>I.C. System, Inc.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Amanda Kemmeling ("Amanda"), is a natural person who resided in Algonquin, Illinois, at all times relevant to this action.

2. I.C. System Inc. ("ICS") is a Minnesota Corporation, and maintained its principal place of business in St Paul, Minnesota, all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

4. Pursuant to 28 U.S.C. §1367(a), the Court also has Supplemental Jurisdiction over Plaintiff's claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.,* because they share a common nucleus of operative fact with Plaintiff's claims under the FDCPA.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

6. At all times relevant to this action, ICS collected consumer debts.

7. ICS regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8. ICS is a "debt collector” that regularly collects consumer debts as defined by 15 U.S.C. §1692a(6).

9. At all relevant times, ICS was engaged in “trade” and “commerce” as defined by 815 ILCS 505/1(f).

10. As described, *infra*, ICS contacted Amanda to collect a debt that was incurred primarily for personal, family, or household purposes.

11. This alleged obligation is a “debt” as defined by 15 U.S.C. § 1692a(5).

12. Amanda is a “consumer” as defined by 15 U.S.C. § 1692a(3).

13. In 2022, Amanda began purchasing medical supplies from Byram Healthcare (“Creditor”).

14. In exchange for the medical supplies, Amanda paid Creditor monthly.

15. Despite making regular payments to Creditor, ICS began mailing Amanda written correspondence attempting to collect debts supposedly owed to Creditor.

16. In one letter, ICS demanded hundreds of dollars from Amanda to bring the account current.

17. Amanda does not owe Creditor or ICS hundreds of dollars.

18. Creditor’s online portal shows that Amanda does not owe Creditor hundreds of dollars.

19. In response to one of ICS’s letters, Amanda notified ICS, by US Mail, disputing and demanding validation of the debt and instructed ICS only communicate with her by email.

20. ICS has not validated the debt.

21. Despite this, on an unknown date, ICS mailed Amanda another demand letter ("Second Letter"), this time demanding payment of different amounts. *See* Exhibit A.

22. Upon reviewing the Second Letter, in conjunction with the other letter(s) ICS mailed to Amanda, it was impossible for Amanda to determine the amount that Amanda allegedly owed.

23. To make matters more confusing, ICS did not date any of the letters it mailed to Amanda.

24. The undated letters have various dates referenced and contain information that is confusing and contradictory.

25. As stated, *supra*, the Second Letter is not dated.

26. Despite the fact that the Second Letter lacks a date, in the Second Letter ICS stated, in relevant part:

> Byram Healthcare has placed the past due balance for account number 35816764 in our office. Byram Healthcare is both the original and current creditor to whom this debt is owed.

| | | |
|---|---|---|
| As of 06/08/2022 you owed: | | $3,750.00 |
| Between 06/08/2022 and today: | | |
| You were charged this amount in interest: | + | $0.00 |
| You were charged this amount in fees: | + | $0.00 |
| You paid or were credited with this amount toward the debt: | | $-$3,725 |
| **The total amount of the debt now:** | | **$25.00** |

27. However, for example, the third page of the Second Letter claims the "Current Balance" is now $550.00. *See* Exhibit B.

28. The Second Letter did not contain appropriate information instructing Amanda how she could determine the name and address of the original creditor and did not comply with the Model Validation Notice as provided by the CFPB.

29. Specifically, in the Second Letter's instructions on obtaining this information, it provided Amanda with instructions on how to instead dispute the debt.

30. There is no way to determine from the Second Letter which date "today" and "now" refer to, as the Second Letter is not dated.

31. Amanda was thereby misled as to the status of the subject debt, for it was not associated with a particular date.

32. Additionally, Amanda was confused and bewildered because prior to receiving the Second Letter, Amanda had already disputed the debt.

33. The Second Letter made Amanda believe that if she didn't pay the alleged debt, a debt would be reported on her credit.

34. As a result of the ICS's contradictory and confusing letters, Amanda felt forced to pay Creditor the amount ICS claimed she owed $25, despite not believing that she owed it.

35. As such, as a result of ICS contradictory and confusing letters, Amanda was forced to pay more than what was required and/or necessary.

36. A consumer, such as Amanda, cannot pay an alleged debt, trusting the debt collector, such as ICS, and the statements made within the debt collector's correspondence, when it appears that the information stated in the debt collector's letter is incorrect, inaccurate, or otherwise misleading, making the consumer question the legitimacy of debt collector's attempts to collect the alleged debt.

37. The fact that ICS did not date the letter and yet attempted to define the subject debt based on a nebulous date was suspicious, misleading, and out of character for a legitimate debt collection.

38. Therefore, ICS's omissions cast a negative shadow over its debt collection practice in general.

39. By withholding the date of the letter, ICS withheld a material term from Amanda which made it confusing for her to understand the nature of the subject debt.

40. One important element of federal consumer protection law revolves around keeping the consumer informed.

41. When they go astray, debt collectors often introduce a tacit element of confusion into their dunning letters to leave the consumer somewhat uninformed.

42. This strategy helps debt collectors to achieve leverage over consumers by keeping key pieces of information away from them.

43. There are also potential benefits to the debt collector in not dating letters, for example, making it more difficult for consumers to prove the date that debt collectors contacted them at inconvenient times or places and/or after consumers exercise their Federal Rights under the FDCPA.

44. When a consumer is faced with something less than the required facts behind owing a debt, they often give up and choose to pay an unwarranted debt to avoid further trouble.

45. On information and belief, it is the policy and/or procedure of ICS to send out undated letters, such as this one, to consumers like Amanda.

46. ICS followed that policy and/or procedure here and, as a result, Amanda was harmed.

47. These violations by ICS were unconscionable, knowing, willful, negligent and/or intentional, and ICS did not maintain procedures reasonably adapted to avoid any such violations.

48. ICS's actions created an appreciable risk of harm to Amanda of being unable to properly respond or handle ICS's debt collection efforts.

49. That harm further materialized because ICS's debt collection conduct caused Amanda to expend time to decode the Second Letter.

50. ICS's collection efforts with respect to the debt caused Amanda to suffer concrete and particularized harm, *inter alia*, because the FDCPA provides Amanda with the legally protected right not to be misled or treated unfairly with respect to any action for the collection of any consumer debt.

51. ICS's deceptive, misleading, and unfair representations and/or omissions with respect to its collection efforts were material misrepresentations that affected and frustrated Amanda's ability to intelligently respond to ICS's collection efforts because Amanda could not adequately or informatively respond to ICS's letter.

52. ICS's collection efforts caused Amanda emotional distress in the form of frustration, annoyance, aggravation, and anxiety and caused Amanda to pay an amount that she does not believe she owed.

**COUNT ONE**

**Violation of the Fair Debt Collection Practices Act**

53. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 52 above as if fully set forth herein.

54. Defendant violated 15 U.S.C. § 1692c(a)(1) by communicating with Plaintiff at a place known to be inconvenient for Plaintiff.

**COUNT TWO**

**Violation of the Fair Debt Collection Practices Act**

55. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 52 above as if fully set forth herein.

56. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

57. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 52 above as if fully set forth herein.

58. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

59. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 52 above as if fully set forth herein.

60. Defendant violated 15 U.S.C. § 1692g by continuing its efforts to collect the debt without first validating the debt pursuant to Plaintiff's written request.

## COUNT FIVE

### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act

61. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 52.

62. The ICFA states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

63. It was unfair for Defendant to conceal suppress and/or omit the material facts from the Second Letter from Plaintiff.

64. Defendant violated 815 ILCS 505/2 through the unfair and deceptive nature of its conduct in relation to Plaintiff.

65. The ICFA was designed to protect consumers, such as Plaintiff, from the exact behavior committed by Defendant.

66. The ICFA further states:

> "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a.

67. Plaintiff has suffered actual damages resulting from Defendant's unlawful practices, including both out of pocket expenses, as well as emotional pain and suffering.

**JURY DEMAND**

68. Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

69. Plaintiff prays for the following relief:

    a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. Judgment against Defendant for actual and punitive damages as provided under 815 ILCS 505/10a(a).

    c. Judgment against Defendant for costs and reasonable attorney fees as provided under 815 ILCS 505/10a(c).

    d. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: December 7, 2022

By: /s/ Jeffrey S. Hyslip

Jeffrey S. Hyslip, Esq.
Hyslip Legal, LLC
207 S. Harrison Street, Suite A
Algonquin, IL 60102
Phone: 614-362-3322
Email: jeffrey@hysliplegal.com

*Attorney for Plaintiff*